No. 89-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RODNEY and DEBRA THELEN, RICHARD and DANA BUECHER,
SUSAN GRASSO, LARRY and NANCY PINNOW, and GEORGE W.
CLEVELAND, JR.,
            Plaintiffs/Appellants,

        -vs-

CITY OF BILLINGS, HEIGHTS SEWER BOARD, BLACK and
VEATCH, COP CONSTRUCTION CO., SANDERSON, STEWART,
GASTON ENGINEERING, INC., and CHRISTIAN, SPRING,
SEILBACH & ASSOCIATES, jointly and severally,
            Defendants/Cross-Appellants.


APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Russel K. Fillner, Judge presiding.

COUNSEL OF RECORD:
        For Appellant:
              Jerrold L. Nye, Nye & Meyer; Billings, MT

        For Respondent:
              Mark S. Werner, McNamer & Thompson; Billings, MT
              Ronald R. Lodders, Crowley, Haughey, Hanson, Toole
              and Dietrich; Billings, MT
              W. Anderson Forsythe, Moulton, Bellingham, Longo
              and Mather; Billings, MT
              J. Dwaine Roybal, Keefer, Roybal, Hanson & Stacey;
              Billings, MT.


                              Submitted on Briefs: May 25, 1989

                                  Decided:  July 5, 1989

Filed:

_____
                Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.


This appeal concerns alleged negligence and inverse condemnation on the part of a city government, a contractor and an engineering firm in designing and constructing a sewer system. Plaintiffs Rodney and Debra Thelen, et al. (Plaintiffs) appeal from the Amended Judgment of the District Court of the Thirteenth Judicial District, Yellowstone County. The court granted summary judgment in favor of defendants City of Billings, Black & Veatch and COP Construction Co. We affirm.

Plaintiffs present a single issue on appeal:

Whether the Amended Judgment of November 16, 1988, granting summary judgment to Defendants by the Montana District Court and dismissing Plaintiffs' case was proper.

In 1984, construction began on a sewer system project undertaken by the City of Billings in the Billings Heights area. The City hired engineering firms and a contractor to design, supervise and build the project. Preliminary studies showed that the soil in the area where Plaintiffs' homes are located contained ground water in quantities that might interfere with the excavation of trenches where sewer lines would be buried. The plans therefore called for the contractor, COP Construction Co., to take steps to "dewater" the trenches through the use of "dewatering wells".

Construction of the project began in a neighborhood some distance from Plaintiffs' homes. Dewatering wells were employed to keep water out of the trenches. The water that collected in the wells was pumped into an existing irrigation ditch that ran through the area, passing near Plaintiffs' homes. At the time in question, the ditch was alleged to

2

have been in use for irrigation of fields near the homes. The use of the ditch for disposal of water from the dewatering wells was alleged to have increased the amount of water in the ditch beyond normal levels used for irrigation.

The first construction activity in Plaintiffs' neighborhood consisted of COP digging a "test hole" in an alley. The workers digging the hole encountered a high water table that prevented completion of the hole and any further excavation. While the hole was being dug, a water main was broken. COP turned off the the water and repaired the main, but it broke again the next day. The main was again turned off and remained off until more permanent repairs were made some time later. COP then refilled the test hole and suspended work in Plaintiffs' vicinity, moving to another area of the project.

While the exact time frame is disputed in the record, sometime after COP's departure from the area Plaintiffs' basements began to flood. Some testified in deposition that the water rose as much as two feet into their basements, causing damage to carpet, wall coverings and concrete. Plaintiffs and other residents of the area held a public meeting attended by COP, the City and project engineers, at which it was agreed that COP would install dewatering wells to alleviate the flooding. The wells were installed, and the water receded from Plaintiffs' basements. There were no further problems with flooding for the duration of the construction work, and the project was completed.

Plaintiffs filed this lawsuit in August of 1985, naming a number of persons and entities involved with the project as defendants. Plaintiffs alleged that the defendants' failure to anticipate and control the ground water they "knew or should have known" to be present amounted to negligence, and also worked a wrongful taking of Plaintiff's property by

3

inverse condemnation. After several motions for partial summary judgment, the field of parties being sued was eventually reduced to the City of Billings, the engineering firm Black and Veatch, and COP Construction Co., referred to here as Defendants. Defendants each moved separately for summary judgment. In a single Memorandum and Order, the District Court granted the motions, holding (1) Defendants breached no duty running from themselves toward Plaintiffs, and (2) Plaintiffs were unable to show damage to their property that was proximately caused by Defendants. This appeal followed.

On appeal, Plaintiffs first argue that the District Court misapplied the summary judgment standard used in this state. Plaintiffs' argument, however, is based on a misunderstanding of Montana law. Plaintiffs argue that Defendants were required to show "that the flooding was not caused by or did not occur as a direct result of the sewer excavation and work." While Defendants were required to show that they were entitled to judgment as a matter of law, that burden did not require Defendants to prove the reverse of Plaintiffs' case. Defendants had to prove as a matter of law that Plaintiffs were not entitled to relief. Plaintiffs thus appear to confuse the burden of proof imposed on a party moving for summary judgment with that imposed on a plaintiff in every civil suit. This fundamental misunderstanding taints Plaintiffs' arguments to this Court.

In order for summary judgment to issue pursuant to Rule 56(c), M.R.Civ.P., the movant must show that there is no genuine issue as to any fact deemed material in light of the substantive legal principles entitling the movant to judgment as a matter of law. All reasonable inferences that can be drawn from offered proof will be drawn in favor of the party opposing the motion. Cereck v. Albertson's, Inc. (1981), 195

4

Mont. 409, 637 P.2d 509. If the movant meets this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. "Mere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue." Gamble Robinson Co. v. Carousel Properties (1984), 212 Mont. 305, 312, 688 P.2d 283, 287. These same standards apply to this Court's review of the decision below. Kronen v. Richter (1984), 211 Mont. 208, 683 P.2d 1315.

Most of the District Court's memorandum in this case deals with a single substantive legal principle held to entitle Defendants to judgment as a matter of law: the principle of proximate cause. Proximate cause is an element of the cause of action for negligence, and must be proven in order for a plaintiff to recover damages. Young v. Flathead County (Mont. 1988), 757 P.2d 772, 45 St.Rep. 1047. Proximate cause is also a required element of the cause of action for inverse condemnation. Rauser v. Toston Irrigation District (1977), 172 Mont. 530, 565 P.2d 632. The initial burden was therefore on Plaintiffs to come forth with sufficient proof to raise issues of material fact concerning each element of their case, including proximate cause. Absent a showing of proximate cause, both of Plaintiffs' claims would fail, and Defendants would be entitled to judgment as a matter of law.

As this Court noted in Young, 757 P.2d at 777, proximate cause has not been defined clearly in Montana law:

> Liability, in any cause of action, attaches if the plaintiff can prove first that defendant's act is a cause in fact of injury and then that the injury is the direct or indirect result, proximately caused by the negligent act. Causation in fact has been determined by the use of the "but for" test ...
> ...

5

> In Montana, proximate cause is one which in a natural and continuous sequence, unbroken by any new, independent cause, produces injury, and without which the injury would not have occurred. [citations] This definition of proximate cause incorporates the "but for" definition in the words of the last clause "[a]nd without which the injury would not have occurred." It is from this wording that the distinction between cause in fact and proximate, or legal, cause has become clouded.

The Young opinion therefore went on to focus on the "natural and continuous sequence, unbroken by any new, independent cause," which must be shown to establish proximate cause.

Before the District Court, Plaintiffs relied largely on their own deposition testimony and a "Preliminary Investigation Report" prepared by a hydrogeologist hired by Plaintiffs. Defendants argued in briefs filed in support of their motions for summary judgment that this evidence alleged insufficient facts on which to base a showing of proximate cause, relying instead on mere speculation. In other words, on the basis of the pleadings and proof in the record, it was impossible for Plaintiffs to show that Defendants' actions, through a natural and continuous sequence unbroken by any new, independent cause, produced Plaintiffs' injuries. The District Court agreed.

Because of Plaintiffs' misunderstanding of Montana's summary judgment standard, their arguments on appeal suffer from the same flaw addressed by the District Court. Plaintiffs argue to this Court that "undisputed facts" in the record raise sufficient issues of material fact to avoid summary judgment: (1) Plaintiffs had no problems with basement flooding prior to the events at issue; (2) the soil tests performed prior to construction indicated that dewatering wells would be necessary to control ground water in excavations; (3) COP Construction began excavating in

6

Plaintiffs' vicinity before installing dewatering wells and encountered ground water; (4) Plaintiffs' basements began flooding "within a day or two" after COP began excavation; (5) once dewatering wells were installed, the flooding subsided; and (6) Plaintiffs have had no further flooding problems in their basements. Plaintiffs state in their brief to this Court that the essence of their argument is thus "but for" Defendants' actions associated with excavating the test hole, Plaintiffs' basements would not have flooded. Plaintiffs cite the Young opinion for the proposition that the "but for" test is appropriate in this case.

The Young opinion quoted above states the distinction between cause in fact and proximate cause. Plaintiffs correctly cite Young for the "but for" test, but they apply the test incorrectly. "But for" is a test of cause in fact, not proximate cause. Stated another way, the "but for" test establishes that if the act complained of had not taken place, the injury would not have resulted. This same argument, however, can be applied to any cause that might have contributed to the flooding; e.g., the presence of water in the irrigation ditch, the composition of the soil, or the water from septic tank drain fields in the neighborhood. By taking the argument to its logical extreme, it could be said that if Plaintiffs had not built their houses with basements, they would have had no flooding problems (several homes in the neighborhood had no basements and thus no flooding).

This is why the law requires an act to be the proximate cause of injury before liability will attach. Which one or more of the contributing causes identified by the "but for" test, through a natural and continuous sequence unbroken by any new, intervening cause, produced Plaintiffs' injury? Certainly Plaintiffs' choice made years ago to build homes with basements would appear so logically remote that it could

7

not be the proximate cause of the flooding. However, by resting their case on "undisputed facts" asserted to meet the "but for" test, Plaintiffs ignore the required showing that Defendants' actions were the proximate cause of the flooding. The facts recited by Plaintiffs do not go to the question of whether there was a natural, continuous, uninterrupted sequence between Defendants' actions and the flooding. They simply allege "but for".

The hydrogeologist's preliminary report relied upon by Plaintiffs below does not remedy the flaw in their argument. The report drew two main conclusions: (1) increased water flow in the irrigation ditch could have caused the flooding, and (2) excavation of a sewer trench between the irrigation ditch and Plaintiffs' homes could have caused or contributed to the flooding. The report also states, "Other factors that would affect water table level at the basements [including climate, storms, irrigation of crops and normal water table fluctuation] were examined in a brief preliminary manner." This report, as is evident from its very title, was preliminary. It is based on the application of hydrogeological theory to a number of possible causes, and its conclusions express no certainty of any kind as to the natural or continuous sequence of events under Plaintiffs' theories. It is cursory and speculative. We have held that speculative statements are insufficient to raise a material issue of fact. B.M. by Berger v. State (1985), 215 Mont. 175, 179, 698 P.2d 399, 401.

Keeping in mind the rule from the Cereck case that all reasonable inferences drawn from the report must be drawn in favor of Plaintiffs, it must be noted that the report's treatment of "other factors" could address the question of proximate cause. Examination of other possible causes could show whether the "sequence" between the Defendants' actions

and the Plaintiffs' injury was "unbroken by any new, independent cause". However, the report's treatment of "other factors" is equally speculative, drawing conclusions such as, "[r]andom inspection of water table records ... suggests that such occurrences may be rare." The only portion of Plaintiffs' offered proof that reasonably could be construed as addressing proximate cause thus fails to raise an issue of material fact under the rule in Berger.

The proof offered by Plaintiffs below failed to raise a material issue of fact on the question of proximate cause. Defendants moved for summary judgment, and pointed out the flaw in Plaintiffs' case. This had a dual effect. By pointing out that Plaintiffs' had failed to raise a genuine issue of material fact as to proximate cause and supporting that assertion with briefs, exhibits and affidavits, Defendants at the same time showed their entitlement to summary judgment. Plaintiffs then had the duty to present sufficient proof to show that an issue of material fact actually existed; mere denial or speculation would not suffice. Gamble Robinson, 683 P.2d at 287.

Plaintiffs failed to come forth with sufficient proof in the District Court. Instead, they merely reiterated their allegations of fact which they assert preclude summary judgment by their own force, and pointed to the hydrogeologist's report which in a preliminary fashion speculates as to the possible causes of the flooding. As shown above, the proof thus far advanced by Plaintiffs is insufficient to avoid summary judgment. By arguing that it was Defendants' burden to disprove their theory of the case, Plaintiffs seek to reverse the burden of proof under Montana law. This would leave the District Court in the position of having to guess at whether Plaintiffs could present a viable case, or would simply waste the court's time in a futile

9

trial.  This Court has specifically refused to require such a guessing game.

> ... the trial court, in considering a motion for summary judgment, has no duty to anticipate possible proof that might be offered under the pleadings and that asking for such foresight demands "clairvoyance" not possessed by even a trial judge.

Larry C. Iverson, Inc. v. Bouma (1981), 195 Mont. 351, 374, 639 P.2d 47, 59.

We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices