No. 91-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CHRIS L. ALEXANDER and SUSAN M. ALEXANDER,
husband and wife; CHERYL BARNES; PHILLIP M.
DALE and MARY ANN DALE, husband and wife;
JANET I. DOUGHERTY; JAMES H. DUNN and
ELEANOR DUNN, husband and wife; DAVID H.
KIRSCH and RHONDA L. KIRSCH, husband and
wife; JANET E. LEWIS; MATHEW G. SALMINEN
and BECKY J. SALMINEN, husband and wife;
DEBORAH M. (PRECHTL) SCOVILLE; and
L. EDWARD WILKINSON and RUTH MAE WILKINSON,
husband and wife,

Plaintiffs and Appellants,

v.

EDWARD K. McCAULEY and ANITA L.
McCAULEY, husband and wife,

Defendants and Respondents.

FILED

AUG 27 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Jefferson,
               The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

             David N. Hull, Attorney at Law, Helena, Montana

        For Respondents:

             Paul B. Smith, Attorney at Law, Boulder, Montana


                          Submitted on Briefs:  July 2, 1991

                                    Decided:  August 27, 1991

Filed:


_____
           Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiffs appeal from the decision of the District Court of the Fifth Judicial District for Jefferson County, granting the defendants' motion for summary judgment. We affirm the District Court.

The sole issue for our determination is whether the District Court erred in granting the defendants' motion for summary judgment.

Appellants in this action are homeowners in the city of Boulder, Montana. Edward and Anita McCauley are owners of an irrigation ditch running from the Boulder River through the town. The McCauleys acquired their ditch and water rights on April 14, 1988, from their predecessor, B. W. Phelan. Edward McCauley first diverted water from the Boulder River into the ditch on May 9, 1988. However, Phelan had been doing so since 1946, and the ditch had been similarly used since at least 1888.

United States Soil Conservation Service Central Forecast records show that between May 27 and 31, 1988, 2.55 inches of rain fell in the Boulder vicinity. A May 30 storm dropped 1.17 inches of rain, the largest precipitation event in five years. On May 30 or 31, many Boulder residents' basements flooded. The parties agree that the flooding resulted from subsurface seepage and not from surface water.

From the time that defendants acquired their water rights in April 1988, until the flooding occurred, no work was done on the

2

ditch other than normal maintenance to clear obstructions within the ditch. On June 5 or 6, 1988, the defendants placed straw bales at the point of their diversion of the Boulder River to increase flow and hold the ditch banks steady while work was done on the headgate and a culvert. The defendants restored the headgate to its pre-1981 level and dredged portions of the ditch on June 9, 1988.

Water level data compiled during April to July 1988 showed a 15 to 20 foot rise in several town wells. On June 27, 1988, an additional valve to an outfall line was opened into the Boulder sewage lagoon system. The Town Administrator testified that the water level in several sewer manholes dropped four to five feet within one hour. During the late evening of June 27 and the morning of June 28, 1988, Edward McCauley shut down his ditch by placing boards and a tarpaulin across the ditch. The barrier remained in place until July 7, 1988. Water levels in many of the affected homes went down or dissipated completely over the next few days.

The homeowners filed suit on July 20, 1989, alleging that defendants negligently caused excessive water to flow through the ditch resulting in ground saturation and the eventual flooding of their properties. Extensive discovery took place, and McCauleys eventually moved for summary judgment. Briefs were submitted, and the District Court thereafter granted defendants' motion for summary judgment. In its order, the District Court found that the

record disclosed no genuine issues of material fact "in light of long established legal principles of water and ditch right law of this state."  The court stated that (1) because the situation giving rise to the complaint existed for over 50 years, prior to homeowners' acquisition of their property, § 85-7-2212, MCA, entitled the defendants to immunity: and (2) the ditch owners are entitled to summary judgment under the rationale of Thelen v. City of Billings (1989), 238 Mont. 82, 776 P.2d 528, since the homeowners were unable to show that the damage to their property was proximately caused by the ditch owners.  This appeal followed.

We find that § 85-7-2212, MCA, is dispositive of plaintiffs' appeal.  That section reads in pertinent part:

> An irrigation district or private person or entity owning or operating irrigation ditches is not liable for:
>
> (1) personal injury or property damage resulting from floodwaters caused by rainfall or other weather conditions or acts of nature:
>
> (2) personal injury or property damage occurring on another's land and caused by water seepage that existed or began before the injured person first arrived on or obtained an interest in the land or before the damaged property was first placed on the land, if the seepage does not carry toxic chemicals onto the land . . . .

Homeowners assert that there was no seepage before the current ditch owners overused the ditch.  However, none of the homeowners acquired an interest in their land prior to 1970, and prior owners in the area stated in affidavits that homes in that area suffered from subsurface seepage as far back as 1935.  The ditch had been used in its present form long before 1935.  In this case, even if

4

the damage to plaintiffs' basements was contributed to by defendants' ditch, the undisputed facts establish that it was either because of weather conditions or the same kind of seepage that had existed for at least *53* years before the plaintiffs arrived or obtained an interest in the land. Under either circumstance, plaintiffs' cause of action is barred by § 85-7-2212(2), MCA.

Accordingly, we affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

5

August 27, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

David N. Hull
Attorney at Law
P.O. Box 534
Helena, MT 59624

Paul B. Smith
Attorney at Law
P.O. Box 565
Boulder, MT 59632

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *Rex J. Renk*
Deputy